IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

LEONARD C. JEFFERSON,
            Plaintiff,

    V.

Case No.

**CA 16- 652**

ASHBEL T. WALL, Director of Rhode
Island Department of Corrections;
CORY CLOUD, Grievance Coordinator
at Rhode Island's Adult Correctional
Institution; MATTHEW KETTLE, Associate
Director/Warden of the Adult Correctional
Institution's Maximum Security Building;
LT. AMARAL, Correctional Officer at the
Adult Correctional Institution; DR.
JENNIFER CLARKE, Medical Program Director
at the Adult Correctional Institution;
DOCTORS AMANDA NOSKA, MICHAEL POSHKUS,
and CHRISTOPHER SALAS, Members of Rhode
Island Department of Corrections Hepatitis
C Committee;
            Defendants.

**PRELIMINARY INJUNCTION REQUESTED**

**JURY TRIAL DEMANDED**

## VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

### I. Introduction

1. This is a civil action brought under 42 U.S.C. section 1983 by Leonard
C. Jefferson, pro se, a state prisoner, alleging that prison officials, via
their policies and practices, have: (i) substantially burdened Plaintiff
exercise of religion, in a discriminatory manner and in the absence of any
legitimate compelling governmental interest, in violation of the Religious
Land Use and Institutionalized Persons Act [RLUIPA] , 42 U.S.C.S. 2000cc et seq.,
"as applied," and (ii) subjected, and continue to subject, Plaintiff to cruel
and unusual punishment, in violation of the Eighth Amendment of the United
States Constitution, by showing deliberate indifference to Plaintiff's serious
medical needs.

1

## II. Jurisdiction

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. section 1331 in that this is a civil action arising under the United States Constitution.

## III. Parties

3. Plaintiff Leonard C. Jefferson, at all times relevant to this action, was in the custody of the Defendants at the Adult Correctional Institution in Cranston, RI.

4. Defendant Ashbel T. Wall, III is the Director of the Rhode Island Department of Corrections [RI DOC]. He is responsible for the care and custody of all persons confined in RI DOC facilities; and responsible for creating and enforcing RI DOC Policies.

5. Defendant Cory Cloud is the Grievance Coordinator at RI DOC's Adult Correctional Institution. He is responsible for the INMATE GRIEVANCE SYSTEM and ensuring that Grievants constitutional claims are upheld.

6. Defendant Matthew Kettle is an Associate Director of the RI DOC. He is the Warden of the Old Maximum Security Building [Max] and is responsible for enforcing RI DOC Policies in Max.

7. Defendant Lt. Amaral is a Correctional Officer [C.O.] leiutenant at the Adult Correctional Institution. He is responsible for enforcing RI DOC Policies upon the prisoners and C.O.s under his supervision.

8. Defendant Jennifer Clarke is a medical doctor. She is the Medical Program Director at the Adult Correctional Institution [ACI] and a member of the ACI's Hepatitis C Committee. She is responsible for making sure that prisoners receive appropriate and adequate medical care, for their serious medical needs, that meets modern community, and Eighth Amendment, standards.

2

9. Defendant Amanda Noska is a medical doctor. She is a member of the ACI's Hepatitis C Committee. She is responsible for making sure that prisoners receive appropriate and adequate medical care, for their hepatitis C, that meets modern community, and Eighth Amendment, standards.

10. Defendant Michael Poshkus is a medical doctor. He is a member of the ACI's Hepatitis C Committee. He is responsible for making sure that prisoners receive appropriate and adequate care, for their hepatitis C, that meets modern community, and Eighth Amendment, standards.

11.  Defendant Christopher Salas is a medical doctor. He is a member of the ACI's Hepatitis C Committee. He is responsible for making sure that prisoners receive appropriate and adequate care, for their hepatitis C, that meets modern community, and Eighth Amendment, standards.

12.  All Defendants are sued in their individual and official capacities.

### IV. Exhaustion of Available Administrative Remedies

13. Pursuant to RI DOC Policy 13.10-1, INMATE GRIEVANCES, as stated on page 17 of the MAXIMUM SECURITY ORIENTATION HANDBOOK, ATTACHMENT 1 hereto, Prisoners " ... may not file a grievance for the following: ... Decisions of qualified medical personnel related to your health." (emphasis in original.)

14. As stated in paragraphs 66 – 72    of this Complaint, Plaintiff has exhausted his administrative remedies on his RLUIPA claims by submitting a LEVEL 1 GRIEVANCE (to Defendant Kettle) and a LEVEL 2 GRIEVANCE (to Defendant Wall) as required by RI DOC Policy 13.10-1.

### V. Factual Statement

15. In October of 1974 a Providence County Superior Court Judge sentenced Plaintiff to serve a sentence of life imprisonment at the ACI.

16. In 1977 Plaintiff converted his religion from Baptist to Islam.

17. Plaintiff participated in Islamic events (including weekly Jumu'ah Prayer Services, yearly fasts of Ramadaan, and the two (2) yearly Eid Prayers

3

and feasts) and received the Islamic diet offered by the RI DOC, in Max, from his 1977 conversion to the religion of Islam until he was released on parole in January of 1985.

18. In January of 1985, Rhode Island's Parole Board released Plaintiff to be supervised, by the Pennsylvania Board of Probation and Parole, in Pittsburgh, PA.

19. Between Plaintiff's 1977 conversion to the religion of Islam and his release on parole in 1985, Plaintiff acted as the "Imam" (prayer-leader) of the Islamic Community in Max.

20. On November 3, 1993 Pittsburgh Police arrested Plaintiff and charged him with assault.

21. Shortly thereafter Rhode Island authorities caused a parole-detainer to be placed on Plaintiff.

22. In May of 1994 a jury convicted Plaintiff on the assault charge.

23. On June 30, 1994 the trial judge sentenced Plaintiff to serve seven and a half to twenty years imprisonment in the custody of the Pennsylvania Department of Corrections [PA DOC].

24. On November 10, 1994 members of Rhode Island's Parole Board voted to: (i) revoke Plaintiff's parole permit; (ii) make Plaintiff permanantly ineligible for parole-consideration; and (iii) to notify Plaintiff, of the action it had taken against him, by mailing a copy of the 11/10/94 MINUTES to Plaintiff in his PA DOC facility.

25. On November 3, 2013 Plaintiff "maxed-out" the 20-year sentence imposed on him in Pennsylvania.

26. On November 5, 2013 Sheriffs from Rhode Island, transported Plaintiff from a PA DOC facility to the Intake Service Center [ISC] of the ACI.

4

Plaintiff's Religious Claims

27. On 11/05/13 Plaintiff had a kufi on his head at all times between his removal from the PA DOC facility and his arrival at the ISC.

28. On 11/05/13, during the commitment procedure at the ISC, a correctional officer [C.O.] told Plaintiff that he had the choice of mailing his kfui to someone outside the prison, or having it destroyed, pursuant to RI DOC policy.

29. Plaintiff chose to mail the kufi out, and paid the postal fee for doing so.

30. KEEFE'S COMMISSARY offers kufis for purchase by prisoners confined in RI DOC facilities.

31. On or about 12/07/13 Plaintiff signed for, and received, the kufi he ordered from KEEFE'S COMMISSARY.

32. From the date stated in the preceeding paragraph to the date on this Complaint Plaintiff has, per RI DOC policy, been prohibited from wearing his kufi at all times and places, except inside his cell and at some Islamic Services.

33. Between 11/05/13 and Plaintiff's 02/18/14 transfer to the Old Maximum Security Building [Max] , no Jumu'ah Prayer or other Islamic Service was conducted at the ISC.

34. From 02/18/14 to the date on this Complaint, Plaintiff has attended each and every Jumu'ah Prayer Service conducted in Max, except those conducted between 10/27/15 and 11/17/15 when Plaintiff was not in the prison's general population.

35. On several occasions in 2014 Plaintiff was asked to act, and he acted, as the Imam at Jumu'ah Prayer Service (meaning: he gave the sermon and led the ritual prayer that follows the sermon).

36. Plaintiff has participated on every Ramadaan (30-day fast), Eid Prayer Service, and Eid Feast observed in Max between 02/18/14 and the date on this Complaint.

37. Plaintiff receives blessings from observing the Islamic tradition of keeping his head covered at all times.

38. Per PA DOC Policy Plaintiff, and more that 10,000 other Muslims in PA DOC custody, was permitted to wear his kufi at all times and places in PA DOC facilities, except during routine security searches and during transit between any of that Commonwealth's thirty (30) or so facilities.

39. Plaintiff wore a kufi at all times and Places in PA DOC facilities everyday between 07/03/94 and 11/05/13.

40. From his earliest days -- of being denied permission to wear his kufi 24 hours a day/7 days a week [24/7] as had been his established practice for 20 years in PA DOC facilities -- at the ACI, sensations of being bareheaded caused Plaintiff to feel, and believe, he was being deprived of and cut off from the blessings he had long grown accustomed to receiving for fulfilling his obligation to keep his head covered at all times.

41. Plaintiff's sense of loss, feeling and being deprived of the blessings inherent in a Muslims obedience to the command to keep his/her head covered, was/is increased each time he saw/sees Muslims, on television, fulfilling this obligation by wearing kufis, turbans, hats, scarfs, and hijabs.

42. Plaintiff was, and remains, particulary vexed by news reports that inform him that while the United States government recognizes, respects and accommodates the religious obligations of Muslims -- (i) (who are classified as so-called "enemy combatants" who have no rights under the U.S. Constitution) to keep their heads covered 24/7 at Camp Delta (the prison) in Guantanamo Bay, Cuba, and (ii) (who have rights under the U.S. Constitution) in Federal Prisons to keep their heads covered 24/7 -- RI DOC officials have rejected their Constitutional obligation to do the same.

43. During the final days of May and the first days of June, 2016 Plaintiff performed his traditional "pre-Ramadaan self-evaluation;" seeking ways to make

6

himself more obedient to, in compliance with, traditional Islamic practices, seeking to obtain the increase in blessings that is proportional with the increased/perfection of fulfilling his religious duties and obligations.

44. Sensations of feeling bareheaded and deprived of the blessings that accompany keeping it covered and seeing other prisoners wearing hats, per RI DOC Policy and/or practice, at all times and places inside Max, prompted Plaintiff to seek the blessings, of/from wearing a kufi 24/7, by mounting a legal challenge to what appears to Plaintiff to be a discriminatory application of policy which, while requiring Dietary Workers to wear hats at all times and places in Max, prohibits Plaintiff from receiving the blessings inherent in fulfilling his religious duty to keep his head covered.

45. Per RI DOC Policy and/or practice, Dietary Workers are required to wear hats in all areas of Max at all times.

46. Dietary Workers, who work in the dining room, wear hats while eating their meals in the dining room.

47. Per RI DOC Policy and/or practice, prisoners employed as "Dining Room Packers" are required to wear hats while performing their duties in the dining room.

48. On 04/13/16 Plaintiff was assigned to work as a Dining Room Packer.

49. From 04/13/16 to the date of this Complaint, Plaintiff has been continuously employed as a Dining Room Packer.

50. Plaintiff has been required, by RI DOC Policy and/or practice, to wear a hat while performing his Dining Room Packer duties in the dining room.

51. Existing RI DOC Policy governs searches of clothing, including hats, that prisoners have on their bodies.

52. KEEFE'S COMMISSARY sell black, and blue, knit stocking hats, and baseball caps to prisoners confined in Max.

7

53. On Saturday, 06/04/16, at Islamic Services in Max's dining room, Plaintiff wore his kufi without any interference from the C.O. supervising that area.

54. On Sunday, 06/05/16, Plaintiff, in response to the announcement on the P.A. system, was let out of his cell to go to the dining room to receive a "Suhur Bag" (which contained Plaintiff's pre-sunrise meal for the first day of the fasts of Ramadaan).

55. On Monday, 06/06/16 -- Ramadaan 1, 1437 in the Islamic Calendar -- Plaintiff prepared an Institutional Request Form, ATTACHMENT 2 hereto, asking Defendant Këttle that the ACI accommodate his rights, pursuant to the RLUIPA, 42 U.S.C.S. section 2000cc-5(7)(A), to wear his kufi in all areas of the prison at all times, subject to standard contraband searches.

56. At around 8:15 PM on Monday, 06/06/16 an announcement on the P.A. system instructed Ramadaan participants to proceed to the dining room.

57. In response to said announcement, Plaintiff's cell door was opened and, with the Request Form (mentioned above in paragraph 55) and his kufi in his hand, Plaintiff walked to the dining room to deposit the Request Form in the mail box (in the dining room) and to receive his "Iftar" (fast-breaking) meal; and a Suhur Bag for the next morning.

58. There were seven (7) or eight (8) C.O.s and six (6) or seven (7) Ramadaan participants in the dining room when Plaintiff entered and dropped the Request Form in the mail box.

59. Plaintiff then followed the painted-line on the floor (i.e., the prescribed path) along the left walls of the dining room to receive his meal; walking away from the C.O.s, who were all seated at tables in the center of the room, except for Defendant Amaral who was standing some 20 - 25 feet from Plaintiff, when Plaintiff, still walking, put his kufi on his head.

8

60. Some of the C.O.s immediately began yelling at Plaintiff, telling him to take off the kufi.

61. Plaintiff, shocked and surprised, responded, telling the C.O.s that Muslims routinely wear kufis at Islamic Services held in the dining room, as he had been allowed to do two (2) days earlier.

62. All of the C.O.s then began yelling at Plaintiff; one of them yelling "Take that f-----g thing off your head!" and telling Plaintiff "this" (Ramadaan meal) "is not a religious service."

63. Plaintiff, stunned by the hostility of the C.O.s, fearing he would be subjected to serious adverse consequences if he attempted to continue debating this issue with the C.O.s, removed his kufi.

64. Defendant Amaral then told Plaintiff to take this matter up with his superiors.

65. Plaintiff then received and ate his Iftar meal, bareheaded, along with the forty (40) or so other Ramadaan participants, received a Suhur Bag for the following morning, and returned to his cell.

66. Plaintiff wrote a LEVEL 1 Grievance on the evening of 06/06/16, ATTACHMENT 3 hereto, and put it in the mail box on 06/07/16.

67. On 06/13/16 Defendant Kettle responded to Plaintiff's Institutional Request Form, ATTACHMENT 2 hereto, stating he "denied your request to wear your kufi in all areas of the prison at all times. I also noticed that you submitted a grievance on this issue without waiting for a response. I will further address this matter in your grievance." See MEMO, ATTACHMENT 2 hereto.

68. Defendant Kettle, in his 06/14/16 response to Plaintiff's LEVEL 1 Grievance, states, among other things, that "religious articles are not allowed to be worn in the dining room during meals. However religious articles may be authorized during a authorized service in the area other than meal times. See ATTACHMENT 3 hereto.

69. RI DOC policy does not prohibit prisoners from wearing crosses, and/or similar religious articles, on chains around their necks in the dining room during meals.

70. On 06/06/16, per RI DOC Policy and/or practice, Dietary Workers, assigned to work in the dining room, wore their hats while eating their breakfast, lunch, and supper in the dining room.

71. Plaintiff timely appealed, by filing a LEVEL 2 Grievance to Defendant Wall, asserting that: (i) available video would support his original claim that seven (7) or eight (8) C.O.s were yelling at Plaintiff and one yelled "take that f-----g thing off your head" in violation of RI DOC Policy; and (ii) RI DOC Policy "requires administrators and staff to allow grievant to wear his kufi at all places and times, subject to contraband searches pursuant to policy, because there is not a single legitimate security-related reason which would justify restricting this exercise of his religious beliefs, and/or his constitutional rights." See ATTACHMENT 4 hereto.

72. On 07/14/16 Defendant Cloud responded (for Defendant Wall) to Plaintiff's LEVEL 2 Grievance, denying it, and saying in pertinent part: "Department Policy (#26.01-3, Religious Programs and Services) does not require Rhode Island Department of Corrections personnel to allow inmates to wear religious garments throughout the facility." See ATTACHMENT 4 hereto.

### Plaintiff's Eighth Amendment/Medical Claims

73. Upon being committed to custody in the ICS on 11/05/13, while undergoing medical screening, Plaintiff told RI DOC Nurse Michelle Garriepy that he suffers from hepatitis C.

74. During a Health Assessment on 03/07/14, by RI DOC Nurse Practitioner Kim Seleyman, Plaintiff requested treatment for his hepatitis C.

75. During the 03/07/14 Health Assessment Nurse Seleyman ordered the following tests to determine the precise nature of Plaintiff's hepatitis: (i) HCV Genotype, (ii) HCV RNA PCR, (iii) Hepatitis C Virus Antibody, and (iv) Liver (Hepatic) Function Panel (6).

76. Blood was drawn, from Plaintiff on 03/14/14, for the tests set forth in paragraph 75 above.

77. RI DOC Treating Physician Dr. Edward Blanchette received a report from LAB CORP, ATTACHMENT 5 hereto, concerning the tests set forth in paragraph 75 above, on 03/25/14.

78. RI DOC Treating Physician Dr. Edward Blanchette received a report from the Rhode Island Department of Health Laboratories, ATTACHMENT 6 hereto, concerning the tests set forth in paragraph 75 above, on 04/10/14.

79. The reports, mentioned above in paragraphs 77 and 78, confirmed the fact that Plaintiff suffers from hepatitis C.

80. The reports, mentioned above in paragraphs 77 and 78, informed RI DOC medical staff members, including the medical defendants mentioned in the caption of this Complaint, that treatment is available to cure the type of hepatitis from which Plaintiff suffers.

81. In response to Plaintiff's request to receive treatment for his hepatitis C, then-Medical Program Director Dr. Fred Vohr told Plaintiff, on 09/09/14, that a less-expensive treatment would be available within the next year and, when it became available, the RI DOC would provide treatment for Plaintiff's hepatitis C. See ATTACHMENT 7 hereto.

82. On 05/10/16 Plaintiff — after seeing many televised ads urging baby-boomers to seek the new cure for hepatitis C -- submitted a Medical Request seeking treatment for his hepatitis C.

11

83. Plaintiff's 05/10/16 Medical Request led to Plaintiff being examined by Dr. Blanchette on 05/31/16.

84. On 05/31/16 Dr. Blanchette referred Plaintiff's request, for treatment, to the ACI's Hepatitis C Committee.

85. As a result of the referral made by Dr. Blanchette on 05/31/16, the members of the ACI's Hepatitis C Committee — including Defendants Clarke, Noska, Poshkus, and Salas — reviewed Plaintiff's medical records, and RI DOC Policy for providing treatment for hepatitis C, in order to determine whether they would provide the treatment that Plaintiff requested.

86. At some time between 05/31/16 and 07/19/16 the members of the ACI's Hepatitis C Committee — including Defendants Clarke, Noska, Poshkus, and Salas — reached their conclusion that RI DOC Policy required them to deny Plaintiff the treatment he requested for his hepatitis C.

87. On 07/19/16 Defendant Noska examined Plaintiff. See <u>ATTACHMENT 8</u> hereto.

88. During the 07/19/16 examination, Defendant Noska told Plaintiff of the Hepatitis C Committe's decision to deny him the treatment he requested. See <u>ATTACHMENT 8</u> hereto.

89. During the 07/19/16 examination, Defendant Noska told Plaintiff that the Hepatitis C. Committee would continue to monitor the progression of the disease in Plaintiff's body. See <u>ATTACHMENT 8</u> hereto.

90. During the 07/19/16 examination, Defendant Noska acknowledged that hepatitis C, untreated, leads to liver cancer and death.

91. During the 07/19/16 examination, Defendant Noska informed Plaintiff that the high cost of treating/curing his hepatitis C, and RI DOC Policy governing the providing of treatment for hepatitis C, were the reasons for the Committee's decision denying his request for treatment.

Claims for Relief

92. Defendant Wall violated Plaintiff's rights — under the RLUIPA, First and Fourteenth Amendments of the U.S. Constitution — by creating and enforcing RI DOC Policy #26.01-3, Religious Programs and Services, in such a manner that it imposed a substantial burden on Plaintiff's exercise of religion, in the absence of a legitimate compelling governmental interest, by prohibiting Plaintiff from wearing his kufi at all times and places in the ACI except inside his cell at some Islamic Services between 11/05/13 and the date of this Complaint.

93. Defendant Wall violated Plaintiff's rights — under the RLUIPA, First and Fourteenth Amendments of the U.S. Constitution — by creating and enforcing RI DOC policies in a discriminatory manner which caused Dietary Workers to be required to wear hats in all areas of Max at all times, and caused Plaintiff to be prohibited from wearing his kufi in all areas of Max at all times (except in his cell and at some Islamic Services); and thus unnecessarily and substantially burdened Plaintiff's exercise of religion.

94. Defendants Amaral and Kettle violated Plaintiff's rights — under the RLUIPA, First and Fourteenth Amendments — by interpreting RI DOC Policy #26.01-3 to mean that Plaintiff should/would be prohibited from wearing his kufi in the dining room during the 30 Iftar meals of Ramadaan's fasting in 2016 while, per RI DOC Policy and/or practice, Plaintiff was required to wear a hat in the dining room at all times when performing his dining room packers duties; and thus unnecessarily and substantially burdening Plaintiff's exercise of religion.

95. Defendants Wall, Cloud, and Kettle violated Plaintiff's rights — under the RLUIPA, First and Fourteenth Amendments — by interpreting the RLUIPA in a manner which prohibited Plaintiff from keeping his head covered at all times except during routine searches and at all places in the ACI, in order to provide

13

an appearance of justification for their (improper) denial of Plaintiff's
formal June, 2016 request for permission to wear his kufi at all times and
places in accordance with his religious beliefs and long-standing/well-known
Islamic Tradition.

96. Defendants Wall, Cloud, and Kettle discriminated against Plaintiff's
religious beliefs and practices -- and thus violated his rights under the RLUIPA,
First and Fourteenth Amendments -- by denying Plaintiff's formal June, 2016
request for permisson to wear his kufi at all places and times, while RI DOC
Policy and/or practice required Dietary Workers to wear hats at all places and
times.

97. Defendant Wall subjected Plaintiff to cruel  and unusual punishment --
in violation of the Eighth and Fourteenth Amendments of the U.S. Constitution
-- by creating and enforcing policies and practices which led the ACI's Hepatitis
C Committee to deny Plaintiff's request for timely adequate care for his
serious medical need; (i.e., treatment known to cure hepatitis C).

98. Defendant Wall subjected, and continues to subject, Plaintiff to cruel
and unusual punishment by creating, and knowingly allowing RI DOC medical per-
sonnel to enforce, policies and practices which cause Plaintiff to be an
unwilling participant in government medical testing involving a known-deadly
disease, like an animal in a laboratory or a person in the United State Health
Service's infamous Tuskegee Syphlis Experiment; in violation of the Eighth and
Fourteenth Amendments.

99. Defendants Clarke, Noska, Poshkus, and Salas showed deliberate
indifference to Plaintiff's serious medical needs -- and thus violated his rights,
to be free from cruel and unusual punishment, under the Eighth and Fourteenth
Amendments -- when they, with full knowledge that Plaintiff suffers from hepatitis
C, denied his request to receive treatment that is known to cure this deadly
disease.

14

100. Defendants Clarke, Noska, Poshkus, and Salas showed deliberate indifference to Plaintiff's serious medical needs –– and thus violated his rights, to be free from cruel and unusual punishment, under the Eighth and Fourteenth Amendments –– when they, with full knowledge that Plaintiff suffers from a deadly disease, refused to provide the known and available cure for financial reasons.

101. Defendants Clarke, Noska, Poshkus, and Salas showed deliberate indifference to Plaintiff's serious medical needs –– and thereby violated his rights, to be free from cruel and unusual punishment, under the Eighth and Fourteenth Amendments –– when they allowed non-medical factors, including RI DOC Policy, to become their reason for denying Plaintiff the treatment that is medically-indicated to cure his hepatitis C..

102. Defendants Wall, Clarke, Noska, Poshkus, and Salas showed deliberate indifference to Plaintiff's serious medical needs –– and thus violated his rights under the Eighth and Fourteenth Amendments –– when they determined that RI DOC medical personnel should/would continue to monitor the damage caused by the hepatitis C Virus, and deny treatment with the known and available cure until such time as the virus had actually caused substantial, life-threatening, damage to Plaintiff's liver.

Relief Requested

WHEREFORE, Plaintiff requests that the Court grant the following relief:

A. Issue a declaratory judgment stating that:

    1. RI DOC Policy 26.01-3, Religious Programs and Services, as created, interpreted, and enforced, by Defendant Wall, to prohibit Plaintiff from wearing his kufi in all areas of the ACI at all times, violated Plaintiff's rights under the RLUIPA,

    2. Defendants Amaral and Kettle violated Plaintiff's rights under the

15

RLUIPA, First and Fourteenth Amendments, by prohibiting Plaintiff from wearing his kufi during Iftar/Ramadaan meals in the dining room, in light of facts that (i) RI DOC Policy 26.01-3 authorizes the wearing of kufis at Islamic Services; (ii) RI DOC Policy and/or practice requires Dietary Workers to wear hats while eating in the dining room; and (iii) Plaintiff, when performing his Dining Room Packer's duties, was/is required to wear a hat in the dining room.

3. Defendants Wall, Cloud, and Kettle violated Plaintiff's rights, under the RLUIPA, First and Fourteenth Amendments, in a discriminatory manner, by denying Plaintiff's June 2016 formal request for permission to wear his kufi (for religious purposes) at all times and in all areas of the ACI while RI DOC Policy and/or practice (for non-religious purposes) requires Dietary Workers to wear hats at all times and places while performing their assigned duties.

4. Defendants Wall, Cloud, Kettle, and Amaral substantially burdened Plaintiff's exercise of religion, in the absence of any legitimate compelling governmental interest, by prohibiting Plaintiff from wearing his kufi, at all times and places except in his cell and at some religious services, and thereby violated Plaintiff's rights under the RLUIPA.

5. Defendant Wall, by creating and having RI DOC employees enforce, the Policies and practices which deprived Plaintiff of timely treatment, with the known cure for his hepatitis C, demonstrated deliberate indifference to Plaintiff's serious medical needs; subjected Plaintiff to cruel and unusual punishment; and thus violated Plaintiff's rights under the Eighth and Fourteenth Amendments.

6. Defendants Clarke, Noska, Poshkus, and Salas demonstrated deliberate indifference to Plaintiff's serious medical needs, subjected Plaintiff

16

to cruel and unusual punishment, and thus violated Plaintiff's
rights under the Eighth and Fourteenth Amendments, by following a
RI DOC Policy which made non-medical factors the basis for the
Hepatitis C Committee's decision to deny Plaintiff's request to
receive the treatment known to cure Hepatitis C.

7. Defendants Clarke, Noska, Poshkus, and Salas demonstrated deliberate
indifference to Plaintiff's serious medical needs, subjected Plaintiff
to cruel and unusual punishment, and thus violated the Eighth and
Fourteenth Amendments, by making Plaintiff an unwilling participant
in a government medical experiment, wherein the damage caused by the
deadly Hepatitis C virus would be monitored while said Defendants
withheld from, and denied, Plaintiff the known and available cure.

B. Issue an injunction ordering Defendant Wall to:

1. immediately allow Plaintiff to wear his kufi in all areas of the ACI
at all times, subject to searches pursuant to existing RI DOC Policies.

C. Issue an injunction ordering Defendants Wall, Clarke, Noska, Poshkus,
and Salas to:

1. immediately begin the process of providing Plaintiff with the
treatment which, pursuant to present-day medical community standards,
is medically-indicated to cure Plaintiff's hepatitis C.

2. provide Plaintiff with the treatment that is medically-indicated to
cure his hepatitis C, and continue providing it, until such time as
the virus has been cleared from his body or he has been released
from RI DOC custody.

D. Award punitive damages against the following Defendants in the following
amounts:

1. $1,000.00 each against Defendants Wall, Cloud, Kettle, and Amaral
for their actions which violated Plaintiff's rights -- under the

RLUIPA, First and Fourteenth Amendments — in a discriminatory

manner.

2. $1,000.00 each against Defendants Wall, Clarke, Noska, Poshkus, and

Salas for their actions which violated Plaintiff's rights — under the

Eighth and Fourteenth Amendments — pursuant to RI DOC Policies

which, by design, deprived Plaintiff of timely and appropriate

medical care for his serious medical needs.

E. Award Plaintiff his costs in bringing this action; and provide any and

all other relief that this Court finds to be appropriate and just.

Respectfully submitted

*Leonard C. Jefferson, pro se*

Leonard C. Jefferson, pro se

PLAINTIFF, LEONARD C. JEFFERSON, HEREBY SWEARS, UNDER PENALTY OF PERJURY

PURSUANT TO 28 U.S.C.SECTION 1746, ON THIS 6TH DAY OF DECEMBER, 2016  THAT

THE FOREGOING IS TRUE AND CORRECT.

*Leonard C. Jefferson*

Leonard C. Jefferson
58330 Maximum Security
P.O. Box 8273
Cranston, RI 02920-0273