L. You may request an extension of up to 20 days to file a Level 1 grievance by writing to the Office of the Warden. You may request an extension of up to 20 days for a Level 2 grievance by writing to the Office of the Director through the Departmental Grievance Coordinator. When the subject matter of a grievance is of a complex nature, the Director or designee may extend the grievance procedure for up to 180 days from the filing of Level 1.

M. You may **not** file a grievance for the following:

- Decisions of the Discipline Board;
- Decisions of qualified medical personnel related to your health;
- Unlawful acts committed by you;
- Decisions of the Classification Board;
- State and Federal laws and regulations;
- Formulation of Departmental policies;
- Designation of an inmate as a Security Risk or Protective Custody inmate;
- Matters beyond the control of the RIDOC, including decisions of the Parole Board.

N. An inmate who files five (5) or more grievances in a week or twenty (20) or more in any consecutive 180-day period may be determined to be abusing the Inmate Grievance Procedure.

O. Invalid or fraudulent grievances will result in disciplinary action.

P. Filing of frivolous grievances may result in the suspension in the right to file.

## INMATE ACCOUNTS
### EXPENDITURES and DEPOSITS

With the approval of the 7-3 Shift Commander, inmates may withdraw funds from their accounts for expenditures as follows:

1. Remittances to dependents and/or members of the immediate family.

2. Remittances to others if the purpose is for personal debt incurred prior to confinement, the support of immediate family or approved bank deposit.

3. Subscriptions to approved periodicals, newspapers, and books. MUST BE ORDERED DIRECTLY FROM THE PUBLISHER, DESIGNATED BOOKSTORES and must be accomplished by utilizing an inmate money transfer slip

17

4. Purchase of Eyeglasses. (Only RIDOC medical approved)

5. Payment for copyrights, birth certificates, license renewals, and legal documents.

6. Purchase of U.S. Savings Bonds

7. Payment of income tax

8. Postage - certified mail on large heavy items such as legal material, which requires more than one postage stamp.

9. Purchase of educational material recommended for approval by the Education Department.

10.. Payments for lost or stolen state property

11. Purchase of Bible or other religious literature approved by the chaplain

12. Repairs of watches and eyeglasses and dentures

13. Bail, legal fees, or court costs;

Funds will not be sent to another inmate or be used for C.O.D. purchases. Funds may be sent to an immediate family member who is also incarcerated with permission of the 7-3 Shift Commander. For items not authorized for inmate possession, request must specify the individual's name and address to which the item will be sent. Requests of funds will normally be for full payment of items purchased.

Remittances to dependents, members of the immediate family or to others are with approval of the 7-3 Shift Commander. The name listed and address of person to receive the funds must appear on your current approved visiting list. Transfer slip must be submitted with a stamped, addressed envelope.

## INMATE WORK DETAILS

The following jobs are available for inmates as vacancies occur. A job application must be submitted for consideration.

18

ATTACHMENT 1





# STATE of RHODE ISLAND and PROVIDENCE PLANTATIONS
## DEPARTMENT of CORRECTIONS
## INTER – OFFICE MEMORANDUM

**TO:** Leonard Jefferson #58330          **DATE:** June 13, 2016
**BLDG/CELL:** Max P1-96

**FROM:** Matthew Kettle, Warden
**DEPT:** Maximum / High Security

**SUBJECT: Response to Letters received 6/13/16**

I have denied your request to wear your kufi in all areas of the prison at all times. I also noticed that you submitted a grievance on this issue with this request without waiting for a response. I will further address this matter in your grievance.

I now consider this matter closed.

C.C. File

# INSTITUTIONAL  REQUEST FORM

TO: WARDEN KETTLE                                    DATE: JUNE 6, 2016

I RESPECTFULLY REQUEST: THAT THE ACI ACCOMMODATE MY RIGHT— PURSUANT TO THE RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT, 42 U.S.C. §2000-CC5(7)(A) —— TO WEAR MY KUFI IN ALL AREAS OF THE PRISON AT ALL TIMES, SUBJECT TO STANDARD CONTRABAND SEARCHES. THANK YOU FOR YOUR ATTENTION TO THIS REQUEST.

INMATE NAME: LEONARD C. JEFFERSON          INMATE ID: 58330

WORK ASSIGNMENT: DINING ROOM PACKER          CELL NUMBER: P/1-96

OFFICERS SIGNATURE: SIGNED BY C.O. PRATT

SUPERIOR'S RESPONSE: _____

_____

_____

_____

_____

                    LIEUTENANT'S SIGNATURE: _____

ATTACHMENT 2

Attachment 2
Page 1 of 1

## Rhode Island Department of Corrections
### REQUEST FOR RESOLUTION OF GRIEVANCE

Instructions: Type or print using a ballpoint pen. All information must be legible on all copies. If more space is needed, attach additional sheets in quadruplicate. Attach copy of previous Form (Informal Resolution Form).

To: (circle one)    **( Level 1, Warden )**      Level 2, Director

From: (name)    LEONARD     JEFFERSON     C      58330
     First      Last      MI      RIDOC ID #

Facility: (circle one)    ISC    HSC    **(MAX)**    MED    MED II    MIN    WR    WOM/DIX    COM.COMF.

### PART A - INMATE REQUEST

Facility where alleged incident occurred: MAXIMUM

Grievance / Complaint: As usual, during Muslim services in the diningroom on 6/4/16, we were allowed to wear our kufis. At around 2015 hrs on 6/6/16 after I entered the dining room to eat the Ramadan meal I put my kufi on. 6 or 7 C.O.s immediately started yelling at me and I was told to "take that fucking thing off your head." Staff acted with complete disrespect and disdain toward my religious beliefs and traditions in violation of my rights under 42 U.S.C. § 2000-cc5(7)(A). I will consider this grievance resolved when I receive permission to wear my kufi at all times and places in accordance with my religious beliefs and legal rights.

June 6, 2016      *Leonard C. Jefferson*
Date                Inmate's Signature

6/13/16      *WARDEN M. Kettle*    (mailed)
Date Recieved      Staff Member's Signature

---

### PART B - RESPONSE

6/14/16                         *Warden M/K*
Date Received              Signature - Associate Director / Warden

After reviewing the investigation I determined that this inmate's perception of the incident does not appear to coincide with the images I observed on the closed circuit video. The inmate enters the dining room and puts on his kufi in front of the Lieutenant. The Lieutenant addresses the situation and the inmate removes the kufi. There is only one other staff member in the area and he does not appear to be engaged in the discussion. I did not observe the "6 or 7" officers described by this inmate in his statement. Religious articles are not allowed to be worn in the dining room during meals. However religious articles may be authorized during an authorized religious service in the area other than meal times. Therefore this grievance is denied.

6/14/16                          *Warden M/K*
Date              Associate Director - Warden

ATTACHMENT 3

*Jog √*

Rhode Island Department of Corrections

## REQUEST FOR RESOLUTION OF GRIEVANCE

Attachment 2
Page 1 of 1

**Instructions:** Type or print using a ballpoint pen. All information must be legible on all copies. If more space is needed, attach additional sheets in quadruplicate. Attcach copy of previous Form (Informal Resolution Form).

To :      Level 1, Warden           (Level 2, Director)
(circle one)

From :   LEONARD      JEFFERSON      C        58330
(name)     First          Last          MI        RIDOC ID #

Facility:   ISC    HSC    (MAX)    MED    MED II    MIN    WR    WOM/DIX    COM.COMF.
(circle one)

### PART A - INMATE REQUEST

Facility where alleged incident occurred : MAX

Grievance / Complaint : 1. GRIEVANT ARGUES THAT AN INDEPENDENT REVIEW OF ALL AVAILABLE VIDEO WILL DISCLOSE VIOLATIONS OF D.O.C. POLICY 3.14-2 AND SUPPORT HIS ORIGINAL CLAIM.
         2. RI D.O.C. POLICY 26-01-3 REQUIRES ADMINISTRATORS AND STAFF TO ALLOW GRIEVANT TO WEAR HIS KUFI AT ALL PLACES AND TIMES, SUBJECT TO CONTRABAND SEARCHES PURSUANT TO POLICY, BECAUSE THERE IS NOT A SINGLE LEGITIMATE SECURITY-RELATED-REASON WHICH WOULD JUSTIFY RESTRICTING THIS EXERCISE OF HIS RELIGION, HIS RELIGIOUS BELIEFS, AND/OR HIS CONSTITUTIONAL RIGHTS.

JUNE 22, 2016          *Leonard C. Jefferson*
Date                 Inmate's Signature

Date Recieved                         Staff Member's Signature

### PART B - RESPONSE

Date Received                             Signature - Associate Director Warden

Departmental policy (#26.01-3 DOC, Religious Programs and Services) does not require Rhode Island Department of Corrections personnel to allow inmates to wear religious garments throughout the facility. In fact it does read, "All inmates have the right to the free exercise of their religious beliefs and the liberty of worship according to the dictates of the consciences. However, the exercise of this right may be restricted for legitimate security reasons." Therefore, this grievance is denied.

7-14-16
Date                                        Associate Director - Warden

on behalf of
Cory Cloud.

ATTACHMENT 4

Accepted by Blanchette MD, Edward    3/25/15 04:50:54 PM          ELEANOR SLATER LAB          PAGE   02/02

**LabCorp** Laboratory Corporation of America    LabCorp Raritan
69 First Avenue, Raritan, NJ 08869-1800                    Phone: 800-631-5250

| SPECIMEN 073-631-0100-0 | TYPE S | PRIMARY LAB RN | REPORT STATUS COMPLETE | Page #: 1 |
|---|---|---|---|---|

ADDITIONAL INFORMATION

CLINICAL INFORMATION
CD- 14008745239

MAX                    FASTING: N
                       DOB: 2/28/1948

| | | PATIENT ID. |
|---|---|---|
| PHYSICIAN ID. BLANCHETTE | NPI | 058330 |

| PATIENT NAME | SEX | AGE(YR./MOS.) |
|---|---|---|
| JEFFERSON,LEONARD | M | 66 / |

ACCOUNT: ACI Men
Dept of Corr-Bur Off-Med Claim
Bluff House 5169
Cranston            RI   02920-0000

PT. ADD.:

| DATE OF COLLECTION | TIME | DATE RECEIVED | DATE REPORTED | TIME | |
|---|---|---|---|---|---|
| 3/14/2014 | 9:15 | 3/15/2014 | 3/20/2014 | 12:05 | 4241 |

ACCOUNT NUMBER:   38381013

| TEST | RESULT | LIMITS | LAB |
|---|---|---|---|

HCV RT-PCR, Quant (Non-Graph)                                         C1
    Hepatitis C Quantitation
                        834,570 IU/mL

    HCV log10                    5.921      log10 IU/mL              01
                                                                    01

    Test Information:
    The quantitative range of the assay is 15 IU/mL to 100 million IU/mL
    using COBAS(R) TaqMan(R) HCV test, v 2.0. The limit of detection (LOD)
    and lower limit of quantification (LLOQ) for this assay is 15 IU/mL.
    Results less than the quantitative range of the assay will be reported
    as "HCV RNA detected, less than 15 IU/mL".

HCV Genotyping Non Reflex                                            02
    Hepatitis C Genotype        1b              See Note
    This assay can detect the six (6) major HCV Genotypes and their most
    common subtypes.

    Several clinical studies have demonstrated that Genotype 1 HCV may be
    more refractory to interferon monotherapy as well as to interferon
    plus ribavirin combination therapy.  Sustained response rates are
    increased for Genotype 1 infected patients when therapy is given for
    48 weeks instead of 24 weeks.                                   02

    Please note:
    This test was developed and its performance characteristics determined
    by LabCorp.  It has not been cleared or approved by the U.S. Food and
    Drug Administration.

    The FDA has determined that such clearance or approval is not
    necessary. This test is used for clinical purposes.  It should not be
    regarded as investigational or for research.

| LAB: 01 RN    LabCorp Raritan | DIRECTOR: Araceli B Reyes   MD |
|---|---|
| 69 First Avenue, Raritan, NJ 08869-1800 | |

| LAB: 02 BN    LabCorp Burlington | DIRECTOR: William F Hancock   MD |
|---|---|
| 1447 York Court, Burlington, NC 27215-3361 | |

| Pat Name: JEFFERSON,LEONARD | Pat ID: 058330 | Spec #: 073-631-0100-0 | Seq #: 4241 |
|---|---|---|---|

Results are Flagged in Accordance with Age Dependent Reference Ranges
Last Page of Report                                    LCM Version: 03.26.01

ATTACHMENT 5

Name: JEFFERSON. LEONARD                    DOB:        1948                    D:

Accepted by Blanchette MD, Edward 04/10/14 12:47:49 PM

## RHODE ISLAND
## DEPARTMENT OF HEALTH LABORATORIES
50 Orms Street
Providence, RI 02904
Phone: (401) 222-5600

ATTN: Blanchette, Edward A

ACI Medical Records Dept-23900
Box 8249
Cranston, RI 02920

Copied to:

Patient: JEFFERSON, LEONARD

, RI
Med Rec #: 2167192
Birthdate: 1948 66 years Male
Chart #: 58330
Ordering Medical Provider: Blanchette, Edward A

## Serology

## Hepatitis

Collect Date: 3/14/2014

Procedure
ANTIBODY TO HEPATITIS C          REACTIVE *f

3/14/2014   ANTIBODY TO HEPATITIS C:
Patient results indicate a high signal-to-cut-off ratio. This indicates past or present HCV infection; supplemental serologic testing not performed. Samples with high signal-to-cut-off ratios usually (>95%) confirm positive with supplemental testing, but <5 of every 100 might represent false positive. If indicated, a reference lab can perform more specific supplemental testing. (MMWR February 7, 2003 / 52(RR03); 1-16)

Patient Name: JEFFERSON, LEONARD                    Printed: 4/7/2014          Pages 1 of 1

Legend:
* = Abnormal             Source V=Venous F=Fingerstick
f = Footnote             c=Corrected
H=High Limit Exceeded

<u>ATTACHMENT 6</u>



**PATIENT:** LEONARD JEFFERSON

**DATE OF BIRTH:** 1948

**DATE:** 09/09/2014 10:20 AM

**VISIT TYPE:** Provider Visit-scheduled

**History of Present Illness**
Comments:
Here about his ear
Asking about hepatitis c. He is positive, but lfts are good.

**Chronic Problems**
Chronic hepatitis C without mention of hepatic com

**Past Medical/Surgical History**

| Condition. | Year | Procedure/Surgery | Year |
|---|---|---|---|

**Diagnostics History**

| Test | Date Ordered | Status | Results |
|---|---|---|---|
| 12 lead EKG | 03/07/2014 | ordered | |

**Medications Active Prior to Today's Visit**

| Drug Name | Dose | Qty | Description |
|---|---|---|---|

**Allergies**

| Allergen/Ingredient | Brand | Reaction: |
|---|---|---|

**Vital Signs**
**Physical Exam**
**Ears:** Hearing grossly intact. Tympanic membranes normal.
**Abdomen:** Soft, non-tender without organomegaly or masses.

**Comments**
eras are fine. I discussed hepatitis C, his LFTs are good, no therapy at this time

ATTACHMENT 7-1

JEFFERSON, LEONARD          1948          1/2

## Assessment/ Plan

Hepatitis delta without mention of active hepatitis B disease, with hepatic coma, hepatitis delta with hepatitis B carrier state (070.42)

### Medications (added, continued or stopped this visit)

| Drug Name | Dose | Qty | Description |
|-----------|------|-----|-------------|
|           |      |     |             |

Document generated by: Fred Vohr MD 09/09/2014 10:30 AM

State of Rhode Island
Department of Corrections
40 Howard Avenue, Cranston, RI 02920

ATTACHMENT 7-2

JEFFERSON, LEONARD       /1948       2/2



PATIENT:                    LEONARD JEFFERSON
DATE OF BIRTH:              __/1948
DATE:                      07/19/2016 02:45 PM
VISIT TYPE:                Provider Visit-scheduled


History of Present Illness:
This 68 year old  male presents with:
1. chronic hepatitis C  (follow-up)
Mr. Jefferson is a 68 yo M w/ hx of CKD stage I, BPH s/p prostatectomy, HTN, and chronic hepatitis C who presents for initial evaluation of chronic hepatitis C.

Pt was initially diagnosed with chronic hepatitis C in 1994, unsure how he acquired this virus.  He has never had any blood transfusions or surgery internationally, has a son with hepatitis but unsure of what type, no known HCV infected partners.  He has never previously been treated.  Reports he feels "alright", no leg swelling, abdominal swelling jaundice or yellowing of his eyes.  Eats well, no nausea or vomiting.  Hx of coughing up blood x 1, no hematemesis, no fever/chills or weight loss.  No melena or BRBPR.

Pt was HIV negative in 2013, doesn't drink ETOH, no other known liver disease or liver disease in family hx aside from his son.  Reports he is very confident he was previously vaccinated against both hep A and B in the past, "I keep on top of my health".

Pt's HCV VL was 834,570, genotype was 1b.  APRI on 6/22/16 was 0.518.  1/16/15 AFP was 4.9, no prior liver imaging.

Pt would also like to discuss recent ENT and pulmonary work-up and the results of this.

Problem List (not yet mapped to SNOMED-CT®):

| Problem Description | Onset Date | Notes |
|---|---|---|
| Chronic hepatitis C without mention of hepatic com | 03/07/2014 | |


## PAST MEDICAL/SURGICAL HISTORY  (Detailed)

| Disease/disorder | Onset Date | Management | Date | Comments |
|---|---|---|---|---|


**Social History:** (Detailed)
CAFFEINE
JEFFERSON, LEONARD C.        ,1948 07/19/2016 02:45 PM 1/3

ATTACHMENT 8 -1

The patient does not use caffeine. No EtOH

## Allergies

| Ingredient | Reaction | Medication Name | Comment |
|---|---|---|---|
| | | | |

## Review of Systems

| System | Neg/Pos | Details |
|---|---|---|
| Constitutional | Comments | As per above in HPI, otherwise negative. See HPI. |

## Vital Signs

| Time | BP mm/Hg | Pulse /min | Resp /min | Temp F | Ht ft | Ht in | Wt lb | Wt kg | BMI kg/m2 | BSA m2 | O2 Sat% |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2:56 PM | | 60 | | | 5.0 | 7.00 | | | | | |

**Measured By**

| Time | Measured by |
|---|---|
| 2:56 PM | Amanda Noska MD |

General: Alert, well-nourished male in no distress.
HEENT: No thrush, minimal erythema in right posterior pharynx. Fair dentition. No oral ulcers or tongue lesions.
Resp: CTAB, no wheezing or rales.
CV: regular, rate, normal S1, S2. No murmur.
Ext: No LE swelling. Otherwise as per below.
Skin: No jaundice, sun tan over visible regions of skin, no palmar erythema.
Neuro: Alert, interactive, no asterixis.
Abd: No venous collaterals, no hepatomegaly or splenomegaly, non-tender throughout, active bowels.

## Assessment/Plan

| # | Detail Type | Description |
|---|---|---|
| 1. | Assessment | Chronic hepatitis C without mention of hepatic coma (070.54). |

Plan comments:
1. Chronic hepatitis C genotype 1B, early stage liver disease (APRI 0.518 on 6/22/16), treatment naive:
- Hepatitis B serologies (HBsAg, HBsAB, HBcoreTotal AB)
- Pt reports he has been vaccinated against hep A and B
- APRI is 0.518, not c/w advanced liver disease but rather suggests early stage liver disease; pt was discussed at the Hep C Committee meeting and will proceed with annual CBC and LFTs to monitor closely for now
- If hep B labs suggest co-infection with both HBV and HCV, pt may be higher on the priority list for treatment

JEFFERSON, LEONARD C. /1948 07/19/2016 02:45 PM 2/3

ATTACHMENT 8-2

Medications *(Added, Continued or Stopped today)*

| Start Date | Medication | Directions | PRN | PRN Reason | Instruction | Stop Date |
|------------|-----------|------------|-----|------------|-------------|-----------|
|            |           |            |     |            |             |           |

*Document generated by*: Amanda Noska MD 07/19/2016 02:59 PM

---

Rhode Island Department of Corrections

JEFFERSON, LEONARD C. .    /1948 07/19/2016 02:45 PM 3/3

ATTACHMENT 8-3

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

LEONARD C. JEFFERSON,
           Plaintiff,

V.                                    Case No.

ASHBEL T. WALL, Director of Rhode
Island Department of Corrections;
CORY CLOUD, Grievance Coordinator
at Rhode Island Adult Correctional
Institution; MATTHEW KETTLE, Associate
Director/Warden of the Adult Correctional
Institution's Maximum Security Building;
LT. AMARAL, Correctional Officer at the
Adult Correctional Institution; DR.
JENNIFER CLARKE, Medical Program Director
at the Adult Correctional Institution;
DOCTORS AMANDA NOSKA, MICHAEL POSHKUS,
and CHRISTOPHER SALAS, Members of Rhode
Island Department of Corrections Hepatitis
C Committee;
           Defendants.

## MOTION FOR PRELIMINARY INJUNCTION

### AND REQUEST FOR EVIDENTIARY HEARING

Plaintiff Leonard C. Jefferson, pro se, pursuant to Rule 65, Fed.R.Civ.P.,
moves this Court to issue a preliminary injunction ordering Defendant Ashbel
T. Wall, and his successor in office, agents and employees, to (i) immediately
allow Plaintiff to wear his kufi in all areas of the Adult Correctional Insti-
tution (ACI) at all times, subject to searches pursuant to existing ACI
Policies, and (ii) immediately begin providing Plaintiff with the treatment
that is medically-indicated to cure his hepatitis C, and to continue said
treatment until the cure has been achieved; and to set a date for a hearing
on this Motion.

The grounds for this Motion, as set forth in the accompanying MEMORANDUM
OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION, are as
follows:

1

1. The Defendants -- by enforcing Rhode Island Department of Corrections (RI DOC) Policy # 26.01-3, Religious Services and Programs, in a manner which prohibits Plaintiff from wearing his kufi, except in his cell and at some Islamic Services, while other RI DOC Policies and/or practices require Dietary Workers to wear hats at all times and places in the ACI -- have, in a discriminatory manner, imposed a substantial burden upon Plaintiff's religious exercise, in the absence of a compelling governmental interest, and, by doing so, have violated, and continue to violate Plaintiff's rights under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. section 2000cc et al.

2. The Defendants -- by following official RI DOC Policies and practices which cause them to monitor Plaintiff's hepatitis C; and, for non-medical reasons, to deny Plaintiff's requests to receive the treatment which is available and known to cure the type of hepatitis that Plaintiff has -- have shown, and continue to show, "deliberate indifference" to Plaintiff's "serious medical needs" which constitutes the "unnecessary and wanton infliction of pain" that is proscribed by the Eighth Amendment of the U.S. Constitution. WHEREFORE, Plaintiff prays this Court grant this Motion.

Respectfully submitted

12-6-16

*Leonard C. Jefferson, pro se*

Leonard C. Jefferson, pro se

2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

LEONARD C. JEFFERSON,
             Plaintiff,

     V.                                    Case No.

ASHBEL T. WALL, Director of Rhode
Island Department of Corrections;
CORY CLOUD, Grievance Coordinator
at Rhode Island Adult Correctional
Institution; MATTHEW KETTLE, Associate
Director/Warden of the Adult Correctional
Institution's Maximum Security Building;
LT. AMARAL, Correctional Officer at the
Adult Correctional Institution; DR.
JENNIFER CLARKE, Medical Program Director
at the Adult Correctional Institution;
DOCTORS AMANDA NOSKA, MICHAEL POSHKUS,
and CHRISTOPHER SALAS, Members of Rhode
Island Department of Corrections Hepatitis
C Committee;
             Defendants.

### ORDER TO SHOW CAUSE AND PRELIMINARY INJUNCTION

     Upon the (i) prayer of the Complaint, (ii) sworn allegations of the Complaint,
(iii) Plaintiff's Motion for Preliminary Injunction, and (iv) the Memorandum of
Law in Support of Plaintiff's Motion for a Preliminary Injunction it is

     **ORDERED** that Defendant Wall, or his successor in office, show cause in
Room _____ of the United States Courthouse, Federal Building, Kennedy Plaza,
Providence, RI, on the _____ day of _____, 201___ , at _____
o'clock, why a Preliminary Injunction should not issue pursuant to Rule 65,
Fed.R.Civ.P., requiring Defendant Wall, his successor in office, agents and
employees to (i) immediately allow Plaintiff to wear his kufi in all areas of
the Adult Correctional Institution (ACI) at all times, subject to searches
pursuant to existing ACI Policies; and (ii) immediately begin providing
Plaintiff with the treatment that is medically—indicated to cure his hepatitis
C, and continue said treatment until the cure has been achieved.

1

**IT IS FURTHER ORDERED** that this order to show cause, and all other papers attached to this application, shall be served upon Defendant Wall –– at the Rhode Island Department of Corrections, Office of the Director, 40 Howard Avenue, Cranston, RI 02920 –– by _____, 201___, and the United States Marshal Service is hereby directed to effectuate such service.

Date: _____ J.
                     United States District Judge

2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

LEONARD C. JEFFERSON,
                    Plaintiff,

        V.                                  Case No.

ASHBEL T. WALL, Director of Rhode
Island Department of Corrections;
CORY CLOUD, Grievance Coordinator
at Rhode Island's Adult Correctional
Institution; MATTHEW KETTLE, Associate
Director/Warden of the Adult Correctional
Institution's Maximum Security Building;
LT. AMARAL, Correctional Officer at the
Adult Correctional Institution, DR.
JENNIFER CLARKE, Medical Program Director
at the Adult Correctional Institution;
DOCTORS AMANDA NOSKA, MICHAEL POSHKUS,
and CHRISTOPHER SALAS, Members of Rhode
Island Department of Corrections Hepatitis
C Committee;
                    Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

### Statement of Case

This is a civil rights action under 42 U.S.C. section 1983 by a state

prisoner who alleges his rights -- under the Religious Land Use and Institu-

tionalized Persons Act (RLUIPA), 42 U.S.C.S. 2000cc-1 et seq., the First,

Eighth, and Fourteenth Amendments of the United States Constitution -- have

been , and continue to be, violated by the prison officials named above in

the caption. Plaintiff seeks injunctive relief to cause the Defendants to

immediately ensure that (i) Plaintiff is permitted to wear his kufi at all

times and places in the Adult Correctional Institution (ACI), and (ii) that

the Defendants immediately provide the medically-indicated treatment to cure

his hepatitis C.

1

Statement of Facts

As stated in the Verified Complaint filed with this Motion:

In support of the RLUIPA, First and Fourteenth Amendment claims, Plaintiff alleges that: he coverted to the Religion of Islam in 1977 (paragraph 16, Complaint)(all following numbers refer to paragraphs of the Complaint); he actively participated in Islamic activities at the ACI between his 1977-conversion and his 1985 parole-release from the ACI (17 & 18); he was reimprisoned, in Pittsburgh, PA, in 1993 (20); and subsequently sentenced to serve a twenty (20) year prison term in custody of the Pennsylvania Department of Corrections (PA DOC) (23); Rhode Island's Parole Board revoked Plaintiff's parole-permit, made him permanently ineligible for parole, and, since 11/10/94, caused his Rhode Island sentence to be a sentence of life imprisonment without a possibility of parole (24); on 11/03/13 Plaintiff completed his Pennsylvania prison term (25) and on 11/05/13 Rhode Island Sheriffs transported him from a PA DOC facility to the ACI (26); Plaintiff wore a kufi at all times during his 11/05/13 transfer (27); upon arriving at the ACI, he was informed that, per RI DOC Policy, he had to choose between mailing the kufi out or having RI DOC staff destroy it, Plaintiff paid the postal fee to mail it out ( 28 & 29); on or about 12/07/13 Plaintiff took possession of the kufi he ordered from KEEFE'S COMMISSARY (31) and from that date to the date on the Complaint (Doc. 1) he has been prohibited from wearing it at all places and times, except in his cell and at some Islamic Services (32); he has participated in every Islamic ritual, available to him, from his 11/05/13 arrival at the ACI up to the date on which he filed the Complaint in this case (33, 34 & 36); he believes he receives blessings from observing the Islamic Tradition of keeping his head covered at all times (37); pursuant to PA DOC Policy, Plaintiff, and more that 10,000 other Muslims in PA DOC custody, was permitted to wear his kufi at all times

2

places in PA DOC facilities, except during routine searches and in transit
between facilities (38); Plaintiff wore a kufi at all times and places in
PA DOC facilities between his 07/03/94 commitment to PA DOC custody and his
11/05/13 transfer to the ACI (39); he believes he is being deprived of blessings
as a result of RI DOC Policies which prohibit him from keeping his head covered
at all times (40 & 44); Plaintiff's sense of feeling deprived of blessings is
heightened by seeing televised images of Muslims, observing the tradition of
keeping their heads covered, including images of Muslims (who have no rights
under the U.S. Constitution) while imprisoned in the U.S. Government prison
(Camp Delta) at Guantanamo Bay, Cuba; and Muslims (who enjoy protection of the
U.S. Constitution) while imprisoned in U.S. Federal Prisons (41 & 42); per
RI DOC Policy and/or practice, Dietary Workers are required to wear hats in
all areas of the Old Maximum Security Building (Max) at all times (45), includ-
ing when they are eating their meals in the dining room (46); per RI DOC
Policy and/or practice Dining Room Packers are required to wear hats in the
dining room (47); Plaintiff has been employed as a Dining Room Packer, contin-
uously, from 04/13/16 up to the date upon which he filed the Complaint in this
case (48 & 49) and has been required, per Policy and/or practice, to wear a
hat while performing his Dining Room Packer duties (50); on Saturday, 06/04/16,
Plaintiff wore his kufi without any interference from the C.O. supervising the
Islamic Service in the dining room (53); on Monday, 06/06/16 -- the first day
of Ramadaan, the Islamic month of fasting -- Plaintiff submitted a Request to
Defendant Kettle requesting permission, pursuant to 42 U.S.C. section
2000cc-5(7)(A), to wear his kufi in all areas of the ACI (55 - 57); after
entering the dining room, and dropping the Request in the mail box, Plaintiff
put his kufi on his head (58 & 59); some of the C.O.s immediately began yelling
at Plaintiff, telling him to take off the kufi (60); Plaintiff responded, telling

3

the C.O.s that Muslims are routinely allowed to wear kufis in the dining room

at Islamic Services, as he had been allowed to do so two (2) days earlier (61);

all of the C.O.s immediately began yelling at Plaintiff, one telling Plaintiff

to "take that f-----g thing off your head" (62); Plaintiff, fearing adverse

consequences in the event that he continued asserting his right to wear his

kufi at the Ramadaan meal, removed the kufi (63); Defendant Amaral then told

Plaintiff to take the issue up with his superiors (64); Défendant Kettle, in

response to Plaintiff's LEVEL 1 Grievance, informed Plaintiff that "religious

articles are not allowed to be worn in the dining room during meals..."(68);

RI DOC Policy does not prohibit prisoners from wearing crosses, and/or similar

religious articles/medallions, in the dining room (69); on 06/06/16, per Policy

and/or practice, Dietary Workers were required to wear hats while eating their

breakfast, lunch, and supper in the dining room (70); and, in response to

Plaintiff's LEVEL 2 Grievance, Defendant Cloud informed Plaintiff that

"Department Policy (#26.01-3, Religious Programs and Services) does not require

Rhode Island Department of Corrections Personnel to allow inmates to wear

religious garments throughout the facility." (72).

   In support of his Eighth and Fourteenth Amendment medical claims Plaintiff

alleges that: upon being committed to the ACI on 11/05/13 he told RI DOC Nurse

Michelle Garriepy that he suffers from hepatitis C (73); during a Health

Assessment, performed by RI DOC Nurse-Practitioner Kim Seleyman, on 03/07/14,

Plaintiff requested treatment for his hepatitis C and Nurse Seleyman ordered

blood tests to determine the precise nature of his hepatitis (74 & 75); on

03/14/14 blood was drawn from Plaintiff for the above mentioned tests (76); on

03/25/14 RI DOC Treating Physician Dr. Edward Blanchette received a report

from LAB CORP, and on 04/10/14 a report from the Rhode Island Department of

Health Laboratories, which present the results of the tests performed on Plain-

tiff's blood (77 & 78); said lab reports informed RI DOC medical staff that

4

Plaintiff suffers from a type of hepatitis C which can be cured by a known and available treatment (79 & 80); on 09/09/14 then-Medical Program Director Dr. Fred Vohr told Plaintiff that a new, less expensive, treatment would be available within a year and, when it became available, the RI DOC would provide treatment for Plaintiff's hepatitis C (81); Plaintiff repeated his request for treatment on 05/10/16 (82) and was seen by RI DOC Treating Physician Dr. Edward Blanchette on 05/31/16 (83); on 05/31/16 Dr. Blanchette referred Plaintiff's request, for treatment, to the RI DOC's Hepatitis C Committee (84); at some time between 05/31/16 and 07/19/16 the members of the Hepatitis C Committee reached their conclusion that RI DOC Policy required them to deny Plaintiff the treatment he requested for his hepatitis C (85 & 86); and, during a 07/19/16 examination, Defendant Noska informed Plaintiff of the Committee's decision to deny his request for treatment, informed Plaintiff that the Committee would continue to monitor the progression of his hepatitis C, acknowledged to Plaintiff that untreated hepatitis C leads to liver cancer and death, and informed Plaintiff that RI DOC Policy, and the high cost of the treatment, were the reasons that caused the Committee to deny his request for treatment.

### ARGUMENT

### POINT 1

### THE PLAINTIFF IS ENTITLED TO THE PRELIMINARY INJUNCTION HE SEEKS

In determining whether a party is entitled to a preliminary injunction courts generally consider several factors. The moving party must demonstrate: (1) a substantial likelihood of success on the merits; (2) a significant risk of irreparable harm if the injunction is withheld; (3) a favorable balance of hardships; and (4) a fit (or lack of friction) between the injunction and the public interest. Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003)(preliminary injunction), A person seeking an interim injunction

bears the burden of demonstrating that each of the four factors weigh in his favor. Letourneau v. Aul, No., 2015 WL 5167854, at * 2.

### A. There is a substantial likelihood that Plaintiff will prevail on the merits of his claims

Regarding his RLUIPA, First and Fourteenth Amendment claims, Plaintiff has a great likelihood of success on the merits. What the Defendants have done here -- i.e., to enforce a policy which prohibits Plaintiff from wearing his kufi at all times and places, except inside his cell and at some religious services -- has been specifically singled out, and identified, by the Supreme Court as an example of an unconstitutional substantial burden on exercise of religion. Holt v. Hobbs, 135 S.Ct 853, 862, 190 L.Ed.2d 747 (2015). Additionally, Plaintiff has alleged that: (i) as a "Dining Room Packer" he is required, by RI DOC Policy and/or practice, to wear a hat in the dining room, but the Defendants prohibited him from wearing his kufi in the dining room during the thirty (30) Iftar meals, in the dining room, during the 2016 observance of Ramadaan; and (ii) RI DOC Policy and/or practice mandates that Dietary Workers wear hats at all times and places in the prison while RI DOC Policy prohibits Plaintiff from wearing his kufi in all areas of the jail, except inside his cell and at some Islamic Services. Courts have held that prison officials failed to meet their burden, of demonstarting that the policies restricting the wearing of kufis, were the "least restrictive means" of accomplishing governmental interest, in situations where secular head coverings were permitted. See Ajala, 106 F.Supp. 3d at 982 – 987 (prison that allowed secular hats failed to show that allowing kufi would trigger tensions and materially increase searching); Ali v. Stephens, 69 F.Supp. 3d 633, 644 – 49 (E.D. Tex. 2014) (prison's justification for kufi ban rejected as speculative "post hoc rationalizations" because it failed to address more lenient policies used by

6

other prison systems and failed to explain why secular hats, which were sometimes permitted, did not cause same concerns); Malik v. Ozmit, No. 8:07-387 RBH-BHH, 2008 WL 701517, at* 11 (D.S.C. Feb. 13, 2008)(with unexplained evidence that other inmates were allowed to wear caps, hoods and hats outside of their cells, fact issue existed as to whether kufi ban was least restrictive means to prevent smuggling of contraband), adopted, 2008 WL 701394 (D.S.C. Mar. 13, 2008), aff'd, 289 F.App'x 662 (4th Cir. 2008); Aziyz v. Tremble, No. CIV A 5:03CV-412 HL, 2008 WL 282738, at*2,*6 (M.D. Ga. Jan. 31 2008)(kufi ban plainly not least restrictive alternative to prevent inmates from identifying themselves as gang members because prison later allowed uniform kufi); Caruso v. Zenon, 2005 WL 5957978, at*20 (prison that required stocking cap or baseball cap failed to carry burden of establishing that outright ban on kufi was least restrictive alternative).

In the matter of Plaintiff's Eighth and Fourteenth Amendment medical claims, Plaintiff's allegations in his Complaint, Doc. 1, and the documents attached thereto,(ATTACHMENTS 5 - 8 ), conclusively demonstrate that the Defendants are aware that Plaintiff has a serious medical need and, notwith-standing their knowledge of the known and available treatment medically-indicated by Plaintiff's need, the Defendants have, pursuant to RI DOC Policy, refused and continue to refuse, for non-medical reasons, to provide treatment. What the Defendants have done, and continue to do here, is to show "deliberate indifference" to Plaintiff's serious medical needs, which -- pursuant to Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285 (1976), and the cases flowing from it, including: U.S. v. DeCologero, 821 F.2d 39, 42 - 43 (1st Cir. 1987); Mahan v. Plymouth House of Corrections, 64 F.3d 14,18 (1st Cir. 1995); Kosilek v. Maloney, 221 F.Supp.2d 156,180 (D.Mass. 2002); Westlake v. Lucas,

537 F.2d 857, 860 (6th Cir. 1976)(cited with approval in ESTELLE, 429 U.S. at 105 n 11, 97 S.Ct. at 291 n 11)(where prison authorities deny reasonable request for medical treatment and such denial exposes the inmate "to undue suffering or the threat of tangible injury," deliberate indifference is manifest.); Ancata v. Prison Health Servs, 796 F.2d 700, 704 (11th Cir. 1985) (deliberate indifference is manifest where "knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care.") — constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. Estelle, 429 U.S. at 104. The Eighth Amendment does not allow necessary medical care to be denied a prisoner because care is expensive or because it may be controversial. See, Kosilek, 221 F.Supp.2d at 181 – 83.

### B. There is substantial risk that Plaintiff will suffer irreparable harm if the injunction is withheld

In the matter of Plaintiff's RLUIPA, First and Fourteenth Amendment claims, Plaintiff alleges that his right to freely exercise his religiou has been violated by the enforcement of a RI DOC Policy which prohibits him from wearing his kufi at all times and places, except inside his cell and at some Islamic Services. The enforcement of such a policy is a clear violation of the RLUIPA, 42 U.S.C.S. section 2000cc et seq. Holt v. Hobbs, 135 S.Ct. 853,862, 190 L.Ed. 2d 747 (2015)(if Plaintiff's religious beliefs require him to wear his kufi "at all times," then a rule that allows him to wear his kufi "most of the time" imposes a substantial burden on his religious exercise because the Rule requires him to "engage in conduct that seriously violates his religious beliefs.") See Also Ali v. Stephens, 69 F.Supp.3d 633, 643–44, 2014 WL 5355529, at*7 (E.D. Tex. Sep. 26, 2014); Malik v. Ozmint, 2008 WL 701517, at*11 (D.S.C. Feb. 13, 2008); Caruso v. Zenon, 2005 WL 5957978, at*18 (D.Colo. July 25, 2005).

The loss of religious freedom caused by a RLUIPA violation — standing alone — is sufficient to show irreparable harm and that the protection of religious practice is an important public interest. Staples v. Gerry, Civil No. 14-cv-473-JL, 2005 U.S. Dist. LEXIS 86629, at*44, 47-48 (D.N.H. May 11, 2015)(citing cases),adopted with modifications sub nom., Staples v. N.H. State Prison 2015 WL 4067139.


In the matter of his Eighth and Fourteenth Amendment medical claims, Plaintiff argues that he will continue to suffer irreparable harm to his health and well-being as long as this Court allows the Defendants to adhere to official policies and practices which show deliberate indifference to Plaintiff's serious medical needs, by using non-medical factors (such as the expense of providing appropriate care) as their basis for denying Plaintiff the treatment that is medically-indicated to treat/cure his hepatitis C. Federal courts have routinely held that hepatitis C is clearly a serious medical problem, Erickson v. Pardus, 551 U.S. 89,94, 127 S.Ct. 2197,2200 (2007); Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004); Bender v. Regier, 385 F.3d 1133,1137 (8th Cir. 2004); Christy v. Robinson, 216 F.Supp.2d 398,404-05, 411, 414-16 (D.N.J. 2002). The Plaintiff has alleged, and the documents show, he has been denied treatment for his serious, potentially-deadly, medical need and that the Defendants have delayed, withheld, and denied Plaintiff the known and available cure, that he has repeatedly requested, for non-medical reasons. i.e., the expense of the medically-indicated treatment. Such conduct by prison officials is a clear violation of the Eighth Amendment. The Eighth Amendment does not permit necessary medical care to be denied to a prisoner because the care is expensive. See Kosilek, 221 F.Supp.2d 156,181-83 (D.Mass. 2002)(citing FARMER, 511 U.S. at 835-847, 114 S.Ct. 1970.)

In addition, Plaintiff is threatened with irreparable harm because of the nature of his hepatitis C, which, if not timely treated, will lead to liver cancer and his death.

As a matter of law, the continuing deprivation of constitutional rights constitutes irreparable harm. Elrod v. Burns, 427 U.S. 347,373, 96 S.Ct.2673 (1976). This principle has been applied to prison litigation generally, see Jolly v. Coughlin, 76 F.3d 468,482 (2d Cir. 1996); Newsom v. Norris, 888 F.2d 371,378 (6th Cir. 1989); McClendon v City of Albuquerque, 272 F.Supp.2d 1250, 1259 (D.N.M. 2003), and especially in prison medical care cases. Phillips v. Michigan Dep't of Corrections, 731 F.Supp. 792,801 (W.D. Mich. 1990), aff'd 932 F.2d 969 (6th Cir. 1991).

### C. The balance of hardships favors Plaintiff

In deciding whether to grant preliminary injunctions, courts ask whether the suffering of the moving party if the motion is denied will outweigh the suffering of the non-moving party if the motion is granted. See, e.g. Mitchell v. Cuomo, 748 F.2d 804,808 (2d Cir. 1984)(holding that dangers posed by prison crowding outweighed state's financial and administrative concerns); Duran v. Anyala, 642 F.Supp 510,527 (D.N.M. 1986)(holding that prisoners' interest in safety and medical care outweighed state's interest in saving money money by cutting staff).

In the matter of Plaintiff's RLUIPA, First and Fourteenth Amendment claims, Plaintiff will continue to suffer the loss of blessings, inherent in his failure to comply with the command to keep his head covered at all times, in the event that the court allows the Defendants to continue enforcing a policy which prohibits Plaintiff from exercising this tradition of his religion. The "suffering" that the Defendants will experience if the court grants the motion will not be any greater than any "suffering" associated with their current duties of supervising the Dietary Workers who, per RI DOC Policy and/or

practice, are required to wear hats in all areas of the prison at all times. In this matter, the Defendants' hardship and/or "suffering" amounts to no more than business as usual.

In the matter of Plaintiff's Eighth and Fourteenth Amendment medical claims, the present emotional suffering and potential physical suffering are enormous, and include his untimely and preventable death. The "suffering" the Defendants will experience if the court grants the Order will consist of providing Plaintiff with the medication, that is known and available, to cure his hepatitis C; something that the Defendants are Constitutionally-obligated to do, and have done and continue to do for other prisoners. In this matter, the Defendants' hardship amounts to nothing more than business as usual.

### D. The relief sought will serve the public interest

In this case, the grant of relief will serve the public interest because it is always in the public interest for prison officials to obey the law, especially the Constitution. Phelps-Roper v. Nixon, 545 F.3d 685,690 (8th Cir. 2008); Duran v. Anyala, 642 F.Supp. 510,527 (D.N.M. 1986)("Respect for law, particularly by officers responsible for the administration of the State's correctional system, is in itself a matter of the highest public interest."); Llewelyn v. Oakland County Prosecutir's Office, 402 F.Supp.1379 (E.D. Mich. 1975) (stating "the Constitution is the ultimate expression of the public interest.").

### POINT II

### THE PLAINTIFF SHOULD NOT BE REQUIRED TO POST SECURITY

Usually a litigant who obtains interim injunctive relief is asked to post security. Rule 65(c), Fed.R.Civ.P. However, the Plaintiff is an indigent prisoner and unable to post security. Elliott v. Kiesewetter, 98 F.3d 47,60 (3d Cir. 1996)(stating that district courts have discretion to  waive the bond requirement contained in Rule 65(c) of the Federal Rules of Civil Procedure if

"the balance of the [] equities weighs overwhelmingly in favor of the party seeking the injunction"); Moltan Co. v. Eagle-Pitcher Industries, Inc, 55 F.3d 1171,1176 (6th Cir. 1995). In view of the clear violations of Plaintiff's rights under the RLUIPA, First, Eighth, and Fourteenth Amendments; and the serious medical consequences from his untreated hepatitis C; the court should grant the Plaintiff's request without requiring the posting of security.

CONCLUSION

For the foregoing reasons, this Court should grant the motion in its entirity.

Date: December 6 , 2016

Leonard C. Jefferson, pro se
Leonard C. Jefferson, pro se